IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLEN & COMPANY, LLC, | ) |
| | ) |
|     Plaintiff/Counterdefendant, | ) |
| | ) No.    08 CV 4596 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| SANFORD USD MEDICAL CENTER, | ) |
| formerly known as SIOUX VALLEY | ) |
| HOSPITAL and USD MEDICAL CENTER, | ) |
| | ) |
|     Defendant/Counterplaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Allen & Company, LLC, brought a two-count complaint in the Circuit Court of the Eighteenth Judicial District, DuPage County, Illinois, alleging claims for declaratory judgment and breach of contract. Defendant Sanford USD Medical Center removed the action to this court pursuant to 28 U.S.C. § 1441(b). Defendant has filed counterclaims for declaratory relief and unjust enrichment. Plaintiff filed the instant motion for summary judgment. For the reasons discussed below, plaintiff's motion for summary judgment is granted.[1]

## BACKGROUND[2]

On August 30, 2004, defendant entered into a five-year License Agreement with BioSafe Medical Technologies, Inc. ("BioSafe"), an Illinois corporation that sold proprietary technology

---

[1] Plaintiff has also moved to strike portions of the affidavit of William K. Hofer, portions of defendant's response memorandum of law in opposition to plaintiff's motion for summary judgment, and portions of defendant's response to plaintiff's L.R. 56.1 statements. Because the court does not rely on that material in granting plaintiff's motion for summary judgment, this motion is denied as moot.

[2] Unless otherwise indicated, the following are uncontested facts from plaintiff's and defendant's L.R. 56.1 statements.

for conducting blood sample analysis for various purposes, including cholesterol testing.
Defendant was obligated to pay BioSafe a monthly fee for a license to use its technology, and
BioSafe was to provide defendant with the right to its license, as well as training, components to
assemble a cholesterol blood-screen test, and relevant printed collateral materials. The
agreement also required BioSafe to refer blood samples to Sanford for cholesterol testing, and
guaranteed Sanford certain revenues from those referrals.

Also on August 30, 2004, First Commercial Bank ("First Commercial") and defendant
entered into a Master Lease Agreement for BioSafe medical equipment (a cholesterol panel
system) that required defendant to make lease payments to First Commercial over a period of
five years. The Master Lease Agreement included a so-called "hell or high water" provision
warning defendant that its obligation to make rental payments was "irrevocable and absolute."[3]
It also contained a waiver of defense provision, under which defendant agreed to waive all
defenses and counterclaims against First Commercial or its assignee ("the rights of any
transferee, assignee or secured party shall not be subject to any defense, set-off or counterclaims
that Lessee may have against Lessor or any other party"). The Master Lease Agreement further
provided that First Commercial had the right to assign its interest in the lease at any time without
notice to defendant.

The parties attached to and incorporated into the Master Lease Agreement a signed
Equipment Acceptance certifying that defendant had accepted the BioSafe cholesterol panel

---

[3] Specifically, the hell or high water clause provides that defendant "agrees that its obligations under this Lease and any Schedule hereto, including without limitation, the obligation to pay rental, are irrevocable and absolute, shall not abate for any reason whatsoever (including any claims against Lessor), and shall continue in full force and effect . . . ."

system. Specifically, the Equipment Acceptance stated that the equipment (described unambiguously as "Biosafe Cholesterol Panel System") had "been delivered and inspected, is of an acceptable size, design, capacity and manufacture, is in good working order, repair and condition, and has been installed to the satisfaction of Lessee; and [defendant] unconditionally accepts the Equipment for all purposes of the Lease." Also attached to and incorporated into the Master Lease Agreement was an Equipment Schedule stating that defendant was to make monthly rental payments for the next 60 months.

Plaintiff Allen & Company, LLC, which is in the business of providing financing for leasing agreements, agreed to finance First Commercial's Master Lease Agreement with defendant. First Commercial accordingly assigned its right to receive payment under the Master Lease Agreement to plaintiff. Plaintiff claims that when it agreed to finance the Master Lease Agreement, it believed (based on the terms of the Master Lease Agreement and the attached Equipment Acceptance) that the equipment had already been delivered to and accepted by defendant.

Plaintiff performed under the Master Lease Agreement and its financing agreement with First Commercial until February 2008, at which time defendant stopped making the monthly payments. Plaintiff filed the instant litigation in Illinois state court, and the case was subsequently removed to this court. Defendant has asserted various affirmative defenses and counterclaims based on the separate Licensing Agreement that it executed with BioSafe. Essentially, defendant argues that it never received and accepted the equipment that was the subject of the Agreement, that it has no duty to make lease payments to First Commercial, the financing party, and that the Agreement was the product of fraud and conspiracy.

3

Plaintiff has filed the instant motion for summary judgment, claiming that Sanford has failed to present any evidence to support its affirmative defenses and counterclaims. Plaintiff argues that courts have consistently enforced this type of agreement's terms to bar defenses and counterclaims such as those presented by defendant. Additionally, plaintiff argues that because defendant executed the Master Lease Agreement, signed the Equipment Acceptance, and performed for over three years, it is now estopped from raising defenses and counterclaims against plaintiff.

## DISCUSSION

### I.     Legal Standard

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing out the absence of a genuine issue of material fact. Once the moving party has met that burden, the nonmoving party must go beyond the pleadings and present specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 322-23 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

## II. Plaintiff's Motion for Summary Judgment

Defendant argues that summary judgment in favor of plaintiff is inappropriate because there are questions of material fact as to its sixteen affirmative defenses and two counterclaims. But as plaintiff correctly points out, the Master Lease Agreement's "hell or high water" provision bars all of defendant's defenses and counterclaims.

Because they are considered essential to the equipment leasing industry, courts strictly enforce hell or high water clauses. See Siemens Credit Corp. v. Steve Kakos, D.D.S., Ltd., No. 94 C 5365, 1995 WL 29618, at *3 (N.D. Ill. Jan. 24, 1995) ("Where a lease is valid, courts have uniformly enforced hell or high water clauses despite the harsh consequences."); Greatamerica Leasing Corp. v. Davis-Lynch, Inc., No. 10-CV-13-LRR, 2011 WL 167248, at *3 (N.D. Iowa Jan. 19, 2011) ("Hell or high water provisions are common in the commercial leasing industry, and they have been uniformly upheld by both state and federal courts."). This rule reflects the policy consideration that if such provisions are not strictly enforced, the financing party's only security for the loan it has given to the lessee is repossessing its equipment with substantially diminished value. Id. It also reflects the general freedom of contract principles; unless there is a compelling reason to the contrary, courts will enforce contracts executed as a result of "arm's-length negotiation by experienced and sophisticated businessmen," such as the parties in the instant case. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972); see also Colorado Interstate Corp. v. CIT Group/Equipment Financing, Inc., 993 F.2d 743, 748 (10th Cir. 1993) (sophisticated parties "are given broad latitude within which to fashion their own remedies for breach of contract," and "contractual limitations upon remedies are generally to be enforced unless unconscionable"). District courts have thus "uniformly given full force and effect to 'hell

and high water' clauses in the face of various kinds of defaults by the party seeking to enforce them." In re O.P.M. Leasing Servs., Inc., 21 B.R. 993, 1006-07 (Bankr. S.D.N.Y. 1982), quoted in Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage, 419 F.3d 107, 110 (2d Cir. 2005). The hell or high water clause at issue here thus renders defendant's obligation to pay absolute and unconditional.

Defendant attempts to avoid this conclusion by arguing that the hell or high water provision is unenforceable because plaintiff is not a holder in due course. As a threshold matter, defendant is incorrect. Hell or high water provisions are enforceable regardless of whether the assignee is a holder in due course, see Greatamerica Leasing Corp., 2011 WL 167248, at *6 (collecting cases), and defendant cites no case law to the contrary. Rather, defendant cites IFC Credit Corp. v. United Business & Industrial Federal Credit Union, 474 F. Supp. 2d 956, 960 (N.D. Ill. 2006), which it describes as holding that summary judgment is inappropriate "despite [a] hell or high water clause where fact questions remained about plaintiff's good faith and notice of defense." That is incorrect. That court addressed the issue of whether, under Illinois law, the plaintiff could properly invoke a waiver of defenses clause if it was not a holder in due course. Id. at 959. In holding that the plaintiff could not do so, the court relied on Article 2 of the Uniform Commercial Code, which provides that a waiver of defenses is enforceable only by a holder in due course. Id., citing 810 Ill. Comp. Stat. 5/9-403(b) ("an agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment" as a holder in due course). The fact that the contract at issue contained a hell or high water clause was irrelevant to the court's analysis, as well as the analysis of the Illinois case

6

law on which that court relied.  See IFC Credit Corp., 474 F. Supp. 2d at 959-60, quoting Walter E. Heller & Co., Inc. v. Convalescent Home of the First Church of Deliverance, 365 N.E.2d 1285, 1291 (1977).  There is thus no support in the case law for defendant's proposition that only a holder in due course can enforce a hell or high water provision.

Moreover, even if such provisions may be enforced only by holders in due course, defendant's argument is unconvincing for another reason: it (circularly) relies on defendant's own theory that the Master Lease Agreement was a lease for services, not equipment, because BioSafe independently represented to defendant that the Equipment Acceptance referred only to the license that defendant had obtained from BioSafe under their License Agreement.  Defendant reasons that, if BioSafe claimed that the Equipment Agreement was really about services instead of equipment, the UCC does not apply.  Because the unambiguous terms of the Equipment Acceptance clearly describe a lease of equipment, however, this argument is unavailing.

Defendant further argues that even if the Master Lease Agreement was for equipment, not services, plaintiff did not take the lease in good faith because it knew that defendant "already had a License Agreement."  This argument defies logic.  It is simply not the case that if plaintiff was aware of defendant's License Agreement with BioSafe, plaintiff must also have known that defendant was not receiving consideration for the Master Lease Agreement.  Defendant has provided no evidence that plaintiff was not a holder in due course.  The evidence shows that plaintiff paid consideration ($251,394.62) to First Commercial for the right to receive payment under the Master Lease Agreement, and no evidence demonstrates that when plaintiff agreed to finance the Master Lease Agreement, it had notice of defendant's possible claims or defenses regarding that agreement.  Neither plaintiff and First Commercial's allegedly close relationship,

nor the fact that plaintiff's assignment occurred around the same time the Master Lease Agreement was executed, creates a material issue of fact as to whether plaintiff took the assignment in good faith.

Next, defendant argues that the hell or high water provision should not be enforced because defendant was fraudulently induced to sign the Master Lease Agreement. But BioSafe, not plaintiff, perpetrated this alleged fraud in the inducement.[4] Defendant is a sophisticated party who willingly and knowingly executed an unambiguous contract and accompanying documents. Its dissatisfaction would more properly be aimed at BioSafe, the alleged wrongdoer.

Moreover, regardless of whether the hell or high water provision is enforceable, defendant is estopped from denying its obligation to pay under the Master Lease Agreement. A party is estopped from asserting clams or defenses if it misrepresented or concealed facts that it knew were false and it knew that other parties would rely on those statements. Parks v. Kownacki, 737 N.E.2d 287, 296 (Ill. 2000). The Equipment Acceptance and Master Lease Agreement were executed on August 30, 2004, and defendant subsequently made monthly payments under the Agreement for over three years, even though it allegedly never received any equipment. By executing the Master Lease Agreement and Equipment Acceptance, defendant induced plaintiff to finance the transaction. See Arnold v. First Credit Corp., 151 B.R. 879, 884 (N.D. Ill. 1993) (holding that the plaintiff was estopped from asserting claims and defenses against the defendant because the defendant had purchased a contract as an assignee on reliance

---

[4] Nor has defendant established how the alleged statements by BioSafe personnel could be considered fraudulent. Defendant admits that it knew that it never leased the equipment described in the Master Lease Agreement, thereby destroying any notion that defendant was deceived when it signed that agreement and related documents.

on the plaintiff's having signed a completion certificate). Defendant does not dispute these facts, nor does it dispute that for this three-year-plus period it failed to attempt to notify First Commercial or any assignee that it had not received any equipment. Instead, defendant claims that BioSafe misled defendant by making assurances that it was planning to provide blood sample referrals to defendant. This claim, however, is irrelevant and does not explain why defendant should not be estopped from asserting defenses and counterclaims.

## **CONCLUSION**

For the foregoing reasons, the court grants plaintiff's motion for summary judgment and denies as moot plaintiff's motion to strike. For the same reasons, the court dismisses defendant's counterclaims. Plaintiff is directed to prepare and file with the court by March 25, 2011, a final judgment order computing all elements of damages, for presentation to the court on March 31, 2011, at 9:00 a.m.


**ENTER:** March 15, 2011

_____
 **Robert W. Gettleman**
 **United States District Judge**